# Lothrop *versus* Wightman.

*Private Sales by Administrators.—Judicial Sale Notice of legal Transfer of Personal Property.—Assignment of Decedent's Estate by Administrators.—Sale of Partner's Interest in Firm Property.—Bill of Exceptions to Evidence, form of.—Creditor when a Witness in Feigned Issue.*

L., one of two partners, died leaving a will, but without appointing executors, when the widow, a son, and another, became administrators *cum test. annexo;* the son then purchased from the administrators his father's father-ship interest, *at private sale*, neither paying nor giving security therefor, and subsequently bought out the .interest of his father's partner; afterwards he gave judgment to the administrators for this debt, and was sold out at sheriff's sale, the administrators becoming the purchasers, for whom, he carried on the business as agent. The administrators becoming embarrassed, made an assignment for the benefit of the decedent's creditors to W., the former partner of deceased, an execution being then in the sheriff's hands against the son, and a levy made on his interest in the stock. In an issue to try the title thereto, in which W. the assignee was plaintiff, and the execution-creditor of the son the defendant, it was *Held*,

1. That though the private sale by the administrators to one of themselves was grossly irregular, yet it could only be avoided by the heirs or creditors of the decedent, and not by a creditor of one of the heirs.

2. But that where the sale is made and judgment taken for the purchase-money, the administrators may buy back the stock at sheriff's sale upon their own judgment, and may permit one of themselves, the son and original purchaser, to carry on the business under the same sign and trade-mark he had used when carrying on the business in his own name; the judicial sale was legal notice of a change of property, and no correspondent change of possession, and of the *indicia* of ownership, were needed to complete the effect.

3. It was not error in the court below, on the trial of the issue, to charge the jury in effect, that the assignment vested a valid title to the goods assigned in the assignee plaintiff, and that he was entitled to hold the possession, for, though an execution against the son was in the hands of the sheriff at the time of the assignment, yet the goods belonged to the estate of. the decedent; and the execution was no lien and no obstacle to the assignment.

4. Though the interest of a copartner in partnership property may be taken in execution and sold for his debts, yet the sale is subject to the rights of partnership creditors, and the purchaser is entitled to an account, and not to the possession of the goods.

5. A bill of exceptions must certify the evidence upon which it is founded, or the Supreme Court will not reverse the judgment rendered in the court

[Lothrop *v.* Wightman.]

below, though it may be apparent that there was error in the ruling complained of in the rejection of evidence offered on the trial.

6. A judgment-creditor of the defendant in execution may be a witness in a feigned issue, under the Sheriff's Interpleader Act, where he has no direct interest in the event of the suit; but where a judgment-creditor was rejected on the trial on the ground of interest, and the bill of exceptions did not contain what he was called to prove, the Supreme Court, on writ of error, will not reverse, though harm may have been done to the defendant in the issue by the rejection.

Error to the District Court of *Allegheny county.*

This was an issue under the Sheriff's Interpleader Act, in which Thomas Wightman was plaintiff, and Sylvanus Lothrop defendant, to try the title to certain personal property claimed by Wightman, but which had been levied on by Lothrop under a judgment and execution against F. R. Lorenz.

The material facts of the case were as follows:—Frederick Lorenz died in 1854, leaving a widow, ten children, and one grandchild, the issue of a deceased child. Mr. Lorenz made a will, but appointed no executors. He gave his widow one-third of all his property, absolutely; the remainder he directed to be divided into twenty-one equal parts, of which two parts should go to each of his children, and one part to his grandchild. Mrs. Catherine Lorenz, the widow, Frederick R. Lorenz, one of the sons, and James J. Gray took out letters of administration, with the will annexed.

At the time of Mr. Lorenz's death he was a partner with Thomas Wightman, in carrying on Penn Glassworks; Mr. Lorenz's interest in the partnership being two-thirds, and Mr. Wightman's one-third. The Penn Glassworks themselves belonged to Mr. Lorenz exclusively. The firm occupied a warehouse at No. 63 Water street, in Pittsburgh, which also belonged to Mr. Lorenz. By the articles of partnership it was provided that, in case of the death of either partner, the business should be carried on by the survivor for one year without any change; at the expiration of which time it should be wound up. In pursuance of this provision Mr. Wightman carried on the business for one year after Mr. Lorenz's death. At the end of this time Frederick R. Lorenz, one of the administrators, bought from the administrators his father's interest in the firm of Lorenz & Wightman, except the outstanding debts, but neither paid nor gave security therefor; afterwards he bought from Mr. Wightman his interest in the concern, except the outstanding debts. He then began to carry on the Penn Glassworks himself, using the same works and the same warehouse which had been before used by the firm, and which still belonged to the estate of old Mr. Lorenz. He also collected in a large amount of debts due to Lorenz & Wightman, after he bought his father's interest

therein, and had in his hands that part of it which belonged to his father's estate. In the winter of 1857 and 1858 he became involved on account of endorsements. The other administrators becoming aware of his embarrassments, on the 25th of January 1858 induced him to confess judgment to them, as administrators, for $62,350.32, the amount which he still owed the estate for the works, and for the money he had collected as aforesaid, after allowing him credit for all the moneys he had paid; and immediately put an execution thereon into the sheriff's hands. On the same day, but at a later hour, he confessed a judgment to his mother, Catharine Lorenz, and his brother, Charles H. Lorenz, for their own use, and in trust for the other legatees and devisees of Frederick Lorenz, deceased, for $7135 of real debt, being the amount of rent which he had collected belonging to the estate. An execution was immediately put into the sheriff's hands upon this judgment, but at a later hour than the other. On these writs the sheriff levied on all the personal property of F. R. Lorenz, being the stock connected with the glassworks, manufactured and unmanufactured at the works, and in the warehouse, tools, &c., for manufacturing, store goods, &c. On the 4th of February 1858 he commenced the sale, and on that and the two succeeding days completed it. The property sold for $29,692.37, and was purchased by the administrators. The sheriff made them, as administrators, a bill of sale of the property, with a receipt at the foot of it for the purchase-money. They on their part paid the sheriff the costs, $165.91, and gave him a receipt for the balance of the purchase-money, $29,526.96, as applicable to the administrator's writ. Beside the $165.91 of costs, there was no money passed either way. It was then agreed by the devisees and legatees and administrators that the latter should go on, and work up the materials on hand, buying such other materials as might be needed for that purpose, for account of the estate; and when that was done, if it was deemed advisable, they should continue to carry them on for the same account. The administrators thereupon gave to Frederick R. Lorenz a power of attorney to attend to the business "*for them and in their names.*" In pursuance of the power the business was conducted by Frederick R. Lorenz, in the same place, under the same sign and brand, and without any apparent change, for about two years, except that the name of F. R. Lorenz, agent, was generally, but not always, put on the bills which were rendered for goods sold. In the mean time Mr. Lothrop, who had obtained judgment against F. R. Lorenz for $3441.06, issued an execution, and levied on all his right, title, and interest in a large lot of glassware. To avoid, as was said, other levies and lawsuits, the administrators of F. Lorenz, deceased, made a voluntary assignment to Thomas Wightman of all the property

held by them as administrators, or in their own right, for the benefit of the creditors, heirs, and assignees of deceased. Wightman claiming the property levied on under Lothrop, executor, this issue was formed as above stated. Between the time of making up the issue and the trial, George Darsie, Esq., was substituted as administrator *de bonis non.*

On the trial the defendant called McCullough as a witness, who, it was admitted, was a judgment-creditor of F. R. Lorenz; objection being made to his competency on the ground of interest, he was rejected by the court, and a bill of exception sealed. The defendant also offered the first administration account of the estate of Frederick Lorenz, deceased, the exceptions filed thereto, the auditor's report thereon, and decree of confirmation, for the purpose of showing that the title of the property purchased at the sheriff's sale by the administrators, vested in them as individuals and not in their representative capacity; to be followed by other proof, that that decision was acquiesced in and recognised by all the parties; and also for the purpose of sustaining the defendant's title and defeating that of plaintiff. This was objected to on the ground of irrrelevancy and incompetency, and was rejected by the court, and a bill of exceptions sealed.

The defendant's counsel requested the court to instruct the jury:—

1. That said administrators having sold the interest of F. Lorenz, deceased, in Lorenz & Wightman, to F. R. Lorenz, on a credit without taking security therefor, the law treats said sale as a distinct appropriation of their own, and they became personally liable to the estate for the value thereof.

2. That having made the appropriation and rendered themselves liable to account for the value of said interest in money, they could not afterward purchase and bring back into the trust other property in the place thereof, but were bound to account for the same in money.

3. That the property purchased by C. Lorenz, F. R. Lorenz, and J. J. Gray, at the sale of the 4th February 1858, vested in them as individuals and not as administrators.

4. That said administrators were not authorized or empowered by law to embark the assets of the estate they represented, in the hazardous and fluctuating business of manufacturing glass; nor could they legally authorize any one else for them and in their stead as administrators, to do so.

5. That possession of personal property is presumptive evidence of ownership, and the burden of proof is on him who alleges the contrary.

6. That, to enable the plaintiff to maintain this action, he must show such right of dominion over the property levied upon at

the time the writ went into the sheriff's hands, that he could have claimed possession of the same goods.

7. That a right to demand a certain sum of money in place of the goods, is not a title to the goods themselves, and that said administrators having authorized F. R. Lorenz to manufacture, sell, and dispose of said glass and stock, in such manner and on such terms as he chose, he was bound to account for the proceeds only; even they could not reclaim possession of the specific property committed to him.

8. That, as the power of attorney merely authorized F. R. Lorenz, as the agent of the administrators, to sell the glass and manufacture and sell the stock then on hand, it cannot be construed to relate to, or protect from levy and sale, other glass manufactured by said F. R. Lorenz, from materials purchased by him subsequently to said sheriff's sale.

9. That, in order to recover in this case, the plaintiff must show the jury clearly and conclusively, that the glass, &c., levied upon, was the same glass purchased at the sheriff's sale of the 4th February 1858, or the product of the materials then purchased and since manufactured.

10. That it was the duty of said administrators, if, as they claim, the business was to be conducted in their name and on their account by F. R. Lorenz, after said sale, so to notify the public and those thereafter dealing with said F. R. Lorenz; and if such notice was not given by the parties, said power of attorney and the alleged change in the business, would not protect said property from levy and sale in this suit, as the property of F. R. Lorenz.

11. If the jury believe, from all the evidence in the cause, that after said sale, F. R. Lorenz was doing business in the same store, with the same sign—his own name—over the door, putting the same brand—his own name—on the glass boxes, with the same factory, the same clerks, and rendered bills in the same form as before said sale, with the knowledge of said administrators, that the property levied upon was subject to seizure as the property of F. R. Lorenz, and no private arrangement between him and said administrators would enable them to claim it as theirs.

12. That, where a purchaser of personal property at sheriff's sale permits said property to remain in the possession of the defendant in the writ for nearly two years, as in this case, and permits the defendant to deal with it during that time as he did before the sale, and under the circumstances stated in the preceding proposition—after said lapse of time and said exercise of dominion and ownership by the original owner, said sale ceases to be evidence of title in the purchaser.

13. That said administrators having made claim to the property

in dispute in their representative capacity, they must stand or fall upon that claim, and they cannot support the same by showing title to said property in their own right. A claim as absolute owner cannot be supported by showing a limited interest, nor can a special property be supported by showing absolute ownership.

14. If the jury believe the plaintiff has failed to establish his title, there must be a verdict for the defendant in the issue, and the jury need not go on to inquire whether the goods are the goods of the defendant, or whose goods they are.

15. That the voluntary assignment made by the administrators of F. Lorenz, deceased, to the plaintiff, and by virtue of which the plaintiff claims title, was void—the administrators not being authorized by law to transfer their trust, and the property in their hands belonging to the estate they represented.

16. That, if the assignment was void, the plaintiff cannot recover.

17. That the assignment by virtue of which the plaintiff claims title was not executed until after the sheriff had levied upon the defendant's goods, and therefore, the goods being in the custody of the sheriff, before and at the time the plaintiff's alleged title accrued, the plaintiff cannot recover.

The court below (HAMPTON, P. J.) negatived all the points of the defendant, and charged:—

" 1. In my opinion, the sale of the personal property to Frederick R. Lorenz, vested in him a good title. If administrators sell the personal property of the intestate at public sale, they are only responsible for the amount it brings. But if they sell at private sale, they are responsible for its full value, without reference to the amount for which it was sold. But in either case, if the sale be fair and honest, the purchaser will take a good title.

" 2. In the absence of any fraud, the administrators took a valid title by their purchase at the sheriff's sale, and might, if they chose to do so, hold it in trust for the estate of Frederick Lorenz, deceased.

" 3. Under the circumstances of this case, if the jury believe that Frederick R. Lorenz carried on the business after the sheriff's sale, as the agent of the administrators, under the power of attorney of the 22d March 1858, and not for himself individually, as testified to by the witnesses, he acquired no interest thereby which was liable to levy and sale on the Lothrop execution.

" 4. That, even if the administrators could not purchase and hold the property in their representative capacity, they took and held a naked title as individuals, in which case they would be partners. Frederick R. Lorenz would, in that case, be the

[Lothrop v. Wightman.]

owner of an undivided third part of the property so purchased. In that case the sheriff could only levy on his interest, which would be the residuum in money coming to him after all the debts of the concern shall be paid. Neither the sheriff nor his vendee could take possession of the property—the right to the possession and title would still remain in the other partners, for the purpose of settling up the concern and paying off the debts.

"5. But whether the administrators are to be considered as owning the property in their representative or individual capacity, the legal title was still in them at the time of the levy, and was subsequently transferred to the plaintiff Wightman, by the assignment of the 22d March 1860."

Under these instructions there was a verdict and judgment for plaintiff. The case was then removed into this court by the defendant, by whom the rejection of the evidence above mentioned, and the refusal of the court below to charge as requested, were assigned for error.

*Thomas H. Baird* and *James H. Hopkins*, for plaintiff in error.

*C. Shaler* and *Thomas McConnell*, for defendant in error.

The opinion of the court was delivered, January 13th 1862, by
WOODWARD, J.—Although it was a gross irregularity on the part of the three administrators of Frederick Lorenz, deceased, to sell his large and valuable personal estate to Frederick R. Lorenz, one of their number, by private sale, and in bulk, yet Lothrop, as an execution-creditor of Frederick R. Lorenz, is not the party to complain of it, for he is neither heir nor creditor of the decedent, and claims in this feigned issue under Frederick R. Lorenz, the purchaser at that sale. His position compels him to affirm the validity of that sale. Wightman also claims under Frederick R. Lorenz, so that the manner in which Frederick acquired title is not open to criticism in this case.

Assuming him to have been at one time the *bonâ fide* owner of the goods, it is admitted that, on the 4th February 1858, they were sold by the sheriff and bid in by the administrators of F. Lorenz, deceased, to wit, Catherine Lorenz, Frederick R. Lorenz, and James J. Gray. This sale was made on two judgments confessed by Frederick R. to the administrators. Neither the judgments nor the sale are questioned for fraud, and the consequence is that they transferred the title of Frederick R. back again to the three administrators. Nor was the title of the purchasers impaired by their suffering Frederick to carry on business as their agent and under the same sign and trade-mark he had used

[Lothrop *v.* Wightman.]

when acting for himself, because the judicial sale was legal notice to all the world of the change of property, and needed no correspondent change of possession and of the *indicia* of ownership to complete its effect. The answers of the learned judge on this point, and on the effect of the administrators carrying on the business of the decedent, were unexceptionable.

But in what character did the three administrators purchase at the sheriff's sale—as administrators or as individuals? Looking at no more of the case than we have on the record, we can not doubt that they purchased in their representative characters, and that the legal effect of the sale was to revest the property in the estate of the decedent. If such were the fact, then, when Lothrop took his execution against Frederick, nearly two years subsequently to the sheriff's sale to the administrators, he could have no right to seize the goods as the property of Frederick, his debtor. As well might he have attempted to make his money out of any other part of the decedent's estate. That a creditor whose debtor happens to be an administrator may not levy an execution on goods of the decedent, in the custody of the debtor only for purposes of administration, is a proposition which nobody will question.

And although it was another gross irregularity in the administrators to assign over to Wightman assets which the law required them to administer, yet the assignment would be, as between the immediate parties thereto, sufficient to pass the legal title. It would bind the administrators and all the world, except only heirs and creditors of the decedent. Neither of this class of persons is here to object. Wightman, the apparent owner of the property when the issue was formed, was, therefore, properly made the party plaintiff. It is of no moment, in the view we are now taking of the case, that the assignment was made to Wightman after Lothrop's execution was in the sheriff's hands, for, upon the assumption that the goods belonged to the dead man's estate, the execution became no lien, and was no obstacle to the assignment.

But it may be said that the defendant offered to prove that the administrators did not purchase in their representative capacity, but as individuals, and that if they purchased as individuals, a right of property vested in or remained undivested in Frederick R. to at least an undivided portion of the goods. If the bill of exception were so we should be obliged to reverse the judgment, for we cannot agree with what fell from the learned judge in rejecting the offer. If the three purchasers were partners, the interest of Frederick could be seized and sold for his debt, subject to the rights of partnership-creditors, and the fact that the purchaser could not succeed to the possession of the goods, but only to a right of account, would not forbid the levy and sale.

[Lothrop v. Wightman.]

If the three purchasers were not partners, then Frederick's interest was seizable like the undivided interest of any tenant in common.   But does the bill certify us that any evidence tending to show that the administrators purchased in their individual and not their representative characters was offered ?   It tells us that certain proceedings were had in the Orphans' Court from which this conclusion would follow, and it refers to them with a *pro ut* the same, but it does not set them forth, nor even furnish us with an outline of them.   In this respect the bill is defective, and it is a very important defect in this case, for, without a full exhibition of the Orphans' Court proceedings, alluded to in the bill, we cannot conceive how they should prove in what character the administrators purchased.   If the offer was made to the court below as it is certified to us; it was rightly rejected, not indeed for the reasons assigned below, but because it did not tend to establish any interest whatever in Frederick R. in the goods in question.

The other bill of exception on the rejection of Michael McCullough as a witness is also defective.   It sets forth that he was called to the book and that the plaintiff objected to him on the ground of interest; that it was admitted that he was a judgment-creditor of Frederick R. Lorenz, and that the court sustained the objection and rejected the witness.   Now we cannot agree that McCullough was disqualified by the fact that he was a creditor of Frederick, for he had no direct interest in the event of this suit, but what was he called to prove?   Anything the loss of an opportunity to prove which was injurious to the defendant ?   The bill gives no answer to these questions.   We are referred to the appendix of the paper-book for the offer, but the offer is not to be found there.   Either in the body of the bill or in the appendix the substance of what McCullough was to prove ought to have been furnished, that we might see whether harm had been done to the defendant by the error of rejecting him.

Thus while both bills of exception afford some ground to believe that the court fell into two technical errors, they contain no evidence that the defendant was injured thereby, and therefore furnish no reason for reversing the judgment.

                                    The judgment is affirmed.